# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# SHREVEPORT DIVISION

| | |
|---|---|
| CHRIS REDFORD | CIVIL ACTION NO. 5:13-cv-3156 |
| VERSUS | JUDGE ELIZABETH ERNY FOOTE |
| KTBS, LLC, ET AL. | MAGISTRATE JUDGE MARK HORNSBY |

## MEMORANDUM RULING

Before the Court is a motion for summary judgment by the Defendants, KTBS, L.L.C. ("KTBS"), George Sirven ("Sirven"), and Randy Bain ("Bain"), seeking to dismiss all claims made by the Plaintiff, Chris Redford ("Redford").[1] For the reasons stated herein, the Defendants' motion for summary judgment will be **GRANTED in part** and **DENIED in part**.

## I.    Factual and Procedural Background

Redford, a white male, was hired by KTBS in April of 2001 to be an on-air crime reporter. In 2008, Redford created a Facebook page.[2] On August 30, 2012, a KTBS employee, Adam Berhiet ("Berhiet"), sent an email to the entire KTBS news department, including Redford, describing the KTBS social media policy.[3] The KTBS social media policy states that when an employee sees complaints from viewers, he or she should "not . . .

---

[1]Record Document 1, p. 4.

[2]Record Document 26-1, p. 1.

[3]Id. at p. 2.

respond at all."[4] The policy also states that "[i]f you chose [sic] to respond to these complaints, there is only one proper response: Provide them with George's contact information, and tell them that he would be glad to speak with them about their concerns. Once again, *this is the only proper response.*"[5] On October 10, 2012, KTBS held a mandatory news department meeting, which Redford attended, wherein a reporter named Eric James spoke about Facebook generally, while Berhiet talked specifically about the KTBS social media policy.[6]

On November 15, 2012, Redford wrote the following comment on his Facebook page:

> Some moron had to go and comment under this story in the KTBS story. The only intelligent thing he had to ask was, "Does Bob Griffith still play with hamsters??" I get so damn tired of stupid people. What the heck purpose does that serve?? Casey Ford is his name. Sorry, but that crap just gets on my last nerve.[7]

Sirven, the KTBS general manager, was notified by a viewer about Redford's Facebook post, and on November 28, 2012, Bain, the KTBS news director, fired Redford.[8] Nick Caloway, a white male, replaced Redford as the on-air crime reporter.[9]

---

[4]Record Document 30-2, p. 1.

[5]Id. (emphasis in original).

[6]Record Document 26-1, p. 2.

[7]Id.

[8]Id. at p. 3.

[9]Id.

On the same day that Redford was fired, Rhonda Lee ("Lee"), a black female, was also fired for violating the social media policy.[10] Lee was an on-air KTBS personality who responded at least three times to negative viewer comments on the official KTBS Facebook page.[11] After each of her violations of the social media policy, Lee received warnings from management.[12] Similarly, another on-air personality, Sarah Machi ("Machi"), responded negatively to a KTBS viewer's comment on her personal Facebook page.[13] Machi, a white female, was not warned or disciplined for her Facebook post.[14]

On August 29, 2013, Redford submitted an intake questionnaire to the EEOC, alleging discrimination based upon his race and sex, and the EEOC issued a dismissal and notice of rights letter on February 3, 2014.[15] Redford filed a complaint in this Court on November 28, 2013.[16] The Defendants filed the instant motion for summary judgment, which Redford opposes.[17]

---

[10]Record Document 26-1, p. 3.

[11]Record Document 30-2, pp. 21-22.

[12]Record Document 30-6.

[13]Record Document 34, p. 13.

[14]Id.

[15]Id. at p. 1.

[16]Record Document 1.

[17]Record Documents 26 and 34.

## II.     Summary Judgment Standard

Summary judgment is proper pursuant to Rule 56 of the Federal Rules of Civil Procedure "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986). Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. If the party moving for summary judgment fails to satisfy its initial burden of demonstrating the absence of a genuine issue of material fact, the motion must be denied, regardless of the nonmovant's response. See Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994). If the motion is properly made, however, Rule 56(c) requires the nonmovant to go "beyond the pleadings and designate specific facts in the record showing that there is a genuine issue for trial." Wallace v. Texas Tech. Univ., 80 F.3d 1042, 1047 (5th Cir. 1996) (citations omitted). While the nonmovant's burden may not be satisfied by conclusory allegations, unsubstantiated assertions, metaphysical doubt as to the facts, or a scintilla of evidence, Little, 37 F.3d at 1075, Wallace, 80 F.3d at 1047, all factual controversies must be resolved in favor of the nonmovant. Cooper Tire & Rubber Co. v. Farese, 423 F.3d 446, 456 (5th Cir. 2005).

## III.   Law and Analysis

Redford has alleged that the Defendants have violated 42 U.S.C. §§ 1981 and 2000e and various state laws. The Defendants contend that Redford's claims should be dismissed because he failed to exhaust his administrative remedies under Title VII, and because he cannot establish a prima facie case of discrimination, defamation, intentional infliction of emotional distress, or any other supplemental state law claims.[18] The Court will address each of these arguments below.

### A.   EEOC Charge of Discrimination

The Defendants argue that Redford failed to exhaust his administrative remedies because he never signed and returned the Equal Employment Opportunity Commission's ("EEOC") verified charge of discrimination. Redford contends that he never received the EEOC's verified charge, and because the Defendants had notice of his Title VII discrimination charge, he should not be penalized for failing to submit the verified discrimination charge.[19]

In an employment discrimination case, a plaintiff must exhaust all of his administrative remedies before he can file suit in federal court. See Taylor v. Books A Million, Inc., 296 F.3d 376, 379 (5th Cir. 2002). Specifically, to maintain a Title VII action, an employee must first file a charge of discrimination with the EEOC within 180 days of the

---

[18]Record Document 26-3.

[19]Record Document 34, p. 9.

alleged unlawful employment practice and receive the statutory notice of right to sue.[20] 42 U.S.C. § 2000e-5(e)-(f)(1); Price v. Sw. Bell Tel. Co., 687 F.2d 74, 77 (5th Cir. 1982). A charge of discrimination must "be in writing under oath or affirmation and shall contain such information and be in such form as the Commission requires." 42 U.S.C. § 2000e-5(b). The EEOC's regulations require that a charge of discrimination be in writing, signed and verified. 29 C.F.R. §§ 1601.9, 1601.3(a). "The verification requirement is designed to protect an employer from the filing of frivolous claims." Price, 687 F.2d at 77 (citing Weeks v. S. Bell Tel. Co., 408 F.2d 228, 231 (5th Cir. 1969)). A sufficient charge should contain "[t]he full name and address of the person against whom the charge is made" and "[a] clear and concise statement of the facts, including pertinent dates, constituting the alleged unlawful employment practices." 29 C.F.R. § 1601.12(b).

In the present case, Redford submitted an intake questionnaire to the EEOC, which included the names of the parties, the date his employment was terminated, and a description of the alleged discriminatory conduct.[21] Redford testified that he did not remember receiving a verified charge from the EEOC.[22] The EEOC file obtained by the Defendants includes the unsigned verified Charge of Discrimination form that was mailed

---

[20] The filing deadline in a deferral state, like Louisiana, is extended from 180 to 300 days.  See Conner v. La. Dep't of Health and Hosps., 247 F. App'x 480, 481 (5th Cir. 2007).

[21] Record Document 30-2, p. 18.

[22] Record Document 34, p. 8.

to Redford with the instructions that he should sign and return it.[23]  Nonetheless, it is

undisputed that KTBS received the Notice of Charge from the EEOC, which informed the

company that Redford had filed a discrimination suit against it.[24] Both Redford and KTBS

received a copy of the Dismissal and Notice of Rights letter from the EEOC.[25]

The Fourth and Eleventh Circuit Courts of Appeal have held that the verification of

a charge of discrimination is a mandatory prerequisite for bringing a lawsuit in federal

court. See Vason v. City of Montgomery, Ala., 240 F.3d 905, 907 (11th Cir. 2001); EEOC

v. Appalachian Power Co., Inc., 568 F.2d 354, 355 (4th Cir. 1978). However, the Fifth

Circuit has found that, in general, employment charges are construed with "utmost

liberality" because they are often prepared by laymen. Price, 687 F.2d at 77 (quoting

Terrell v. United States Pipe & Foundry Co., 644 F.2d 1112 (5th Cir. 1981)). In Price, the

court found that although the plaintiff never signed the verified charge of discrimination,

the information he conveyed to the EEOC was sufficient to inform the agency of the

identity of the parties and the alleged discriminatory conduct, and the agency was able to

issue an official notice of charge to the defendant. Price, 687 F.2d at 78. The court

determined that an important inquiry into whether a "charge" was made is whether the

---

[23]Record Document 30-2, p. 14.

[24]Record Document 26-3, p. 3; Record Document 30-2, pp. 27, 29.  The Court
notes that both the Notice of Charge received by KTBS and the unsigned verified
Charge of Discrimination [Record Document 30-2, p. 19] only have the "sex"
discrimination box checked, although Redford's Initial Questionnaire described both
gender and racial discrimination.

[25]Record Document 30-2, p. 29.

circumstances surrounding the plaintiff's complaint were sufficient to initiate the EEOC administrative process. Id. at 79.  In its analysis, the court also examined whether there was any prejudice to the employer occasioned by the failure to file a "perfected" charge and found that there was none. Id.

In the time since the Fifth Circuit decided the Price case, it has addressed this issue several times and, as the Defendants point out, has not created a general rule that all intake questionnaires are sufficient to satisfy the requirements of a verified EEOC charge. For example, in Harris v. Honda, the court found that an EEOC intake questionnaire was insufficient to substitute for a formal charge because the employee failed to provide evidence that the employer received notice that he was pursuing a discrimination claim with the EEOC. Harris, 213 F. App'x 258, 262 (5th Cir. 2006). The court held that "[t]he consideration given to pro se plaintiffs is not enough to outweigh the major underlying purpose of the exhaustion requirements, which is to ensure that employers have notice of claims of discrimination." Id.

However, in Conner v. Louisiana Department of Health and Hospitals, the court explained that it "has recognized that an intake questionnaire that informs the EEOC of the identity of the parties and describes the alleged discriminatory conduct in enough detail to enable the EEOC to issue an official notice of charge to the respondent is sufficient to set the administrative machinery in motion." 247 F. App'x 480, 481 (5th Cir. 2007)(internal marks omitted). In that case, the court held that where the plaintiff did not file her verified

Page 8

charge until after the filing deadline, her intake questionnaire was sufficient to substitute for her verified charge. Id.

Thus, as seen in Harris, Price's holding that an EEOC intake questionnaire can substitute for a verified charge is not without limits.  The employer's notification that a discrimination suit has been filed against it is of foremost importance when determining whether a charge has been made.  If an intake questionnaire is sufficiently detailed to "set the administrative machinery in motion" and results in the EEOC notifying an employer of a pending claim against it, then that intake questionnaire is sufficient to substitute for a verified charge. See Conner, 247 F. App'x at 481.

Here, because Redford's intake questionnaire identified the parties, the important dates, and the reasoning behind his claim of discrimination, it provided sufficient information for the EEOC to initiate its administrative proceedings. As a part of these administrative proceedings, KTBS was notified by the EEOC of Redford's discrimination complaint. Considering these facts and the liberality with which the Fifth Circuit interprets charges drafted by laymen, this Court finds that Redford's intake questionnaire was sufficient to satisfy the EEOC requirement that he provide a verified charge of discrimination. Therefore, Redford has exhausted his administrative remedies. The Defendants' motion for summary judgment insofar as it relates to exhaustion of administrative remedies is **DENIED**.

**B.    Discrimination Pursuant to Title VII and 42 U.S.C. § 1981.[26]**

Redford argues that the Defendants violated Title VII and Section 1981 because they discriminated against him on the basis of his race and sex.[27] Redford contends that he was not fired for violating the KTBS social media policy but instead was fired in order to prevent Lee, a black woman, from bringing a potential race or sex discrimination lawsuit against the Defendants.[28] The Defendants argue that Redford was not discriminated against, but rather was fired for violating the KTBS social media policy.[29]

The Fifth Circuit considers claims of intentional discrimination, including claims of racial discrimination and retaliation based on Title VII and Section 1981, under the same rubric of analysis. See Raggs v. Miss. Power & Light Co., 278 F.3d 463, 468 (5th Cir. 2002). In Reeves v. Sanderson Plumbing Products, Inc., the Supreme Court found that a burden-shifting framework governs these discrimination claims, and that to sustain a claim under this framework, a plaintiff first must establish a prima facie case of discrimination. Reeves, 530 U.S. 133, 142, 120 S. Ct. 2097 (2000). If a plaintiff is able to establish a prima facie case of discrimination, the burden then shifts to the employer to produce evidence that its

---

[26]There appears to be some confusion among the parties as to additional "constitutional claims" being made by Redford. The Defendants have argued in their brief that Redford cannot support separate constitutional claims. Record Document 26-3, p. 21. However, it appears clear from Redford's brief in opposition to the motion for summary judgment that his references to constitutional claims are the same as his Section 1981 claims. Record Document 34, p. 16.

[27]Record Document 15, pp. 4-6.

[28]Record Document 30, pp. 15-16.

[29]Record Document 26-3, pp. 15-20.

actions were justified by a legitimate, non-discriminatory reason. Id. at 142. If the employer produces a non-discriminatory reason for the employment action, the burden then shifts back to the employee to show by a preponderance of the evidence that the employer's non-discriminatory explanation is pretextual. Id.

### i.    Prima Facie Case

Generally, a plaintiff can establish a prima facie case of discrimination by showing that: (1) he is a member of a protected group; (2) he was qualified for the position at issue; (3) he was discharged or suffered some adverse employment action by the employer; and (4) he was treated less favorably because of his membership in that protected class than other similarly situated employees who were not members of the protected class, under nearly identical circumstances. See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 & n. 13, 93 S. Ct. 1817 (1973).

In the present case, Redford has made both gender and racial discrimination claims against the Defendants. The Defendants argue that Redford will be unable to satisfy the fourth element of his prima facie case, which is whether he was treated less favorably because of his membership in a protected class than other similarly situated employees who were not members of the protected class, under nearly identical circumstances. Id.

The Fifth Circuit has found that employees with different supervisors or who work for different divisions of a company generally will not be deemed similarly situated. See Lee v. Kansas City S. Ry. Co., 574 F.3d 253, 259 (5th Cir. 2009). Employees who have different work responsibilities or who are subject to adverse employment actions for dissimilar

violations are not similarly situated. Id. The Fifth Circuit requires that an employee who proffers a fellow employee as a comparator must demonstrate that the employment actions at issue were taken under "nearly identical circumstances." Id. Employment actions will be considered to have been in nearly identical circumstances when the employees being compared "held the same job or responsibilities, shared the same supervisor or had their employment status determined by the same person, . . . have essentially comparable violation histories . . ." and, most critically, "the plaintiff's conduct that drew the adverse employment decision must have been 'nearly identical' to that of the proffered comparator who allegedly drew dissimilar employment decisions." Id. at 260 (citations omitted).

The Fifth Circuit has noted that "nearly identical" is not the same as "identical." Id. "[A] requirement of complete or total identity rather than near identity would be essentially insurmountable, as it would only be in the rarest of circumstances that the situations of two employees would be totally identical." Id. The Fifth Circuit has provided several examples of what a "nearly identical" situation would entail, including: 1) when the "ultimate decisionmaker as to employees' continued employment is the same individual, even if the employees do not share an immediate supervisor;" 2) when the employees' track records are comparable, but need not include the identical number of identical infractions; and 3) whether the offenses for which discipline was meted out were of comparable seriousness. Id. at 261.

Redford argues that he was treated less favorably than two of his former co-workers, Lee and Machi, who were both female, on-air personalities at KTBS and who also

violated the KTBS social media policy.[30] Redford states that Lee, a black female, repeatedly responded to viewer complaints on the official KTBS Facebook page and that Machi, a white female, re-posted a viewer comment from KTBS' official Facebook page to her personal page, wherein she named and mocked the viewer for his comment.[31] Redford notes that although he and Lee had their employment terminated on the same day, Lee received numerous warnings about the social media policy prior to being fired.[32] Machi received counseling after her first violation of the social media policy and was not fired.[33] Redford argues that Lee and Machi are his comparators for his race and gender discrimination claims and that they received more favorable treatment than he did, which satisfies the fourth element of his prima facie discrimination case. The Defendants argue that because Lee's and Machi's Facebook posts employed different words then Redford, their actions are not "nearly identical" and this "justif[ies] any differences in treatment."[34]

In the present case, it appears clear from the record that Lee and Machi had the same job or responsibilities, shared the same supervisor or had their employment status determined by the same person, and have essentially comparable violation histories to Redford. The critical question then rests on whether Redford's behavior is nearly identical

---

[30]Record Document 34, p. 13.

[31]Id. at 12-13.

[32]Id.

[33]Id. at 13.

[34]Id. at 17.

to that of Lee and Machi. In all three cases, Redford, Lee, and Machi responded negatively to a viewer's Facebook comment on a Facebook page. Lee, posting on the official KTBS Facebook page, responded sarcastically to KTBS viewers who made negative comments about her appearance.[35] Machi, using her personal Facebook page, also wrote a sarcastic response to a KTBS viewer, whom she identified by name.[36] Neither of the two women used profanity in their Facebook posts, whereas the Defendants highlight Redford's choice wording.

The Court does not find the Defendants' argument persuasive. The Fifth Circuit has made clear that "nearly identical" does not have to mean "identical." See Lee, 574 F.3d at 261. Lee illustrates that "nearly identical" situations between comparators can exist when the offenses for which discipline was meted out were of comparable seriousness. This Court believes that requiring Redford, Lee, and Machi to have used the same language in their respective Facebook posts in order for their behavior to be "nearly identical" is a higher burden than the standard imposes. The Court finds that Redford has presented sufficient evidence to create a genuine dispute of fact as to whether his behavior was of "comparable seriousness" and as such, whether the circumstances are nearly identical.

In sum, Redford has presented evidence of two women, one who is Caucasian and one who is African-American, who responded negatively on Facebook to a KTBS viewer's comment, in violation of the KTBS social media policy. Lee was warned repeatedly that she

---

[35]Record Document 30-2, pp. 21, 24 & 31.

[36]Record Document 30-3.

was in violation of the KTBS social media policy before being fired, and Machi was not disciplined at all. The Court finds that Redford has presented sufficient evidence to demonstrate a genuine dispute of fact as to the fourth element of his prima facie case of gender and racial discrimination.

### ii.      Non-Discriminatory Reason for Employment Action

If a plaintiff is able to make a prima facie case of discrimination, then the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for its employment action. See Reeves, 530 U.S. at 142, 120 S. Ct. 2097. This burden of production "can involve no credibility assessment." St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 509, 113 S. Ct. 2742 (1993); see also Haire v. Bd. of Supervisors of La. State Univ. Agric. & Mech. Coll., 719 F.3d 356, 363 (5th Cir. 2013).

Here, the Defendants have argued that Redford was fired because he violated the KTBS social media policy by posting a response on his Facebook page to a viewer comment, which named the viewer, used profanity, and referenced a sexual act.[37] The KTBS social media policy states that:

> **When we see complaints from viewers, it's best not to respond at all.** Responding to these complaints is a *very sensitive situation* and oftentimes our off-the-cuff first response will be the wrong response.
>
> ...
>
> **If you chose [sic] to respond to these complaints, there is only one proper response:** Provide them with George's contact information, and tell them that he would be glad to speak with them about their concerns. Once again, *this is the only proper response.*[38]

---

[37]Record Document 26-3, p. 18.

[38]Record Document 30-2, p. 1 (emphasis in original).

Considering this, the Court finds that the Defendants have successfully raised a non-discriminatory reason for their employment action against Redford, and therefore, the burden then shifts to Redford to present evidence that the Defendants' non-discriminatory reason is pretextual. See Evans v. City of Bishop, 238 F.3d 586, 590 (5th Cir. 2000).

### iii.   Pretexual Reason for Employment Action

To show by a preponderance of the evidence that the employer's nondiscriminatory explanation is simply a pretext for discrimination, a plaintiff must present evidence rebutting each of the nondiscriminatory reasons the employer articulates. Haire, 719 F.3d at 363. A plaintiff may establish pretext by showing that a discriminatory motive was more likely the motive for his employer's decision, through evidence of disparate treatment, or by showing that his employer's explanation is unworthy of credence. Id. The fact finder "may still consider the evidence establishing the plaintiff's prima facie case and 'inferences properly drawn therefrom . . . on the issue of whether the defendant's explanation is pretextual.'" Evans, 238 F.3d at 590 (quoting Reeves, 530 U.S. at 142). The plaintiff bears the ultimate burden of persuading the trier of fact by a preponderance of the evidence that the employer intentionally discriminated against him because of his protected status. See Wallace v. Methodist Hosp. Sys., 271 F.3d 212, 219 (5th Cir. 2000).[39]

---

[39]The Court notes that while a plaintiff ultimately bears the burden of proving pretext to the finder of fact, it is not the Court's place during summary judgment to make credibility determinations or weigh the evidence at hand. See Russell v. McKinney Hosp. Venture, 235 F.3d 219, 225 (5th Cir. 2000)(citing Reeves, 530 U.S. at 150)). It is the job of a jury to choose among conflicting evidence and make credibility determinations. Id.

Redford argues that the Defendants' reason for firing him must be pretextual because he never violated the KTBS social media policy.[40] Although the KTBS social media policy states that employees should not respond to viewer comments, Bain, the KTBS news director who fired Redford, testified that if a KTBS employee responded to a viewer comment on his or her "private [Facebook] page," that action would not be a violation of the KTBS social media policy.[41] Redford argues that he, like Machi, responded to a KTBS viewer on his personal Facebook page, which was not a violation of the social media policy.[42] Redford argues that his Facebook page was his personal page because he created it independently of KTBS and used it to post his personal opinions.[43]

However, unlike Machi, Redford and Lee were fired. Redford states that Lee clearly violated the KTBS social media policy by responding to viewers multiple times on the official KTBS Facebook page. Redford contends that he was not fired for violating the social media policy but instead was fired in order to prevent any potential race or sex discrimination lawsuit by Lee.[44] In sum, Redford argues that Lee, a black woman, was fired for violating

---

[40]Record Document 15, ¶¶ 15-20 and Record Document 34, p. 14.

[41]Record Document 30-6, p. 6.

[42]Record Document 34, p. 14.

[43]Record Document 26-6, pp. 18-19. ("Q. And this was a post by you to what you're calling your personal Facebook page? A. Yeah. You know it's personal when I say, 'Way to go.' Q. But this is a police story as part of your crime reporting for Channel 3? A. Yes, but when I put that on the KTBS page I took off the 'way to go', because I never would put my opinion on any KTBS-related website.")

[44]Record Document 30, pp. 15-16.

the social media policy, and he, a white male, was fired on the same day for allegedly the same reason so that she would be forestalled from ever claiming that she was fired due to her race or sex.

The Defendants contend that Machi, who was not disciplined, and Redford, who was fired, were treated differently because of the difference in their Facebook profile pages.[45] Machi's Facebook profile page could only be seen by people she had "friended," while Redford's page did not have any privacy filters that limited who could view his page.[46] Additionally, the Defendants argue that Redford often used his Facebook profile page to promote his work at KTBS, and that fact, among others, makes his profile page more similar to that of the official KTBS Facebook page.[47] Therefore, the Defendants contend that Machi's Facebook page was private and Redford's Facebook page was both public and affiliated with KTBS.

Here, the KTBS social media policy, as written, states that employees should not respond to viewer comments at all, but if they must respond, they should do so only by providing the viewer with Sirven's contact information. However, evidence in the record indicates that KTBS does not consider an employee's negative comment about a viewer on his or her "private" Facebook page to be a violation of the social media policy. As such, Redford has presented evidence of a question of material fact about whether his Facebook

---

[45]Record Document 26-3, p. 18.

[46]Id.

[47]Id.

profile page is "private" such that any comment he made on the page would not be a violation of the KTBS social media policy. Therefore, the Court finds that Redford has presented a genuine dispute of material fact on whether KTBS's nondiscriminatory reason for firing him was pretextual.

Once a plaintiff has established a prima facie case of discrimination and put forth sufficient evidence for a fact finder to find the employer's proffered reasons to be pretextual, this showing is usually sufficient for a plaintiff's case to survive summary judgment. See Evans, 238 F.3d at 591. Evans stated that "[o]nce the employer's justification has been eliminated, discrimination may well be the most likely alternative explanation, especially since the employer is in the best position to put forth the actual reason for its decision." Id. (citing Reeves, 530 U.S. at 146, 120 S. Ct. at 2108-09).

Because Redford has met his prima facie burden and presented a genuine dispute of material fact as to whether the Defendants' nondiscriminatory reason for firing him was pretextual, the Defendants' motion for summary judgment on Redford's Title VII and Section 1981 claims is **DENIED.**

## C.    Defamation

After receiving negative publicity regarding Lee's termination, on December 13, 2012, Bain released a statement on behalf of KTBS addressing Lee's and Redford's firings (the "KTBS statement"). In it, Bain stated that the company had "dismissed two employees for repeated violation of the station's written procedure."[48] Lee was identified by name as

---

[48]Record Document 26-6, p. 56.

one of the employees, and the other employee was described as "a white male reporter who was an eight year veteran of the station."[49] The KTBS statement further states that "[t]he policy they violated provided a specific procedure for responding to viewer comments on the official KTBS Facebook page."[50] Redford argues that the KTBS statement defamed him and hurt his career.

A cause of action for defamation arises out of a violation of Louisiana Civil Code article 2315 and involves the invasion of a person's interest in his or her reputation and good name.  See Fitzgerald v. Tucker, 98-2313 (La. 6/29/99); 737 So. 2d 706, 715. In order to prevail on a defamation action, a plaintiff must prove the following four elements: "(1) a false and defamatory statement concerning another; (2) an unprivileged publication to a third party; (3) fault (negligence or greater) on the part of the publisher; and (4) resulting injury." Id. "In other words, a plaintiff must prove that the defendant, with actual malice or other fault, published a false statement with defamatory words which caused plaintiff damages." Id. (citations and quotations omitted).

"Generally, a communication is defamatory if it tends to harm the reputation of another so as to lower the person in the estimation of the community, to deter others from associating or dealing with the person, or otherwise expose a person to contempt or ridicule." Id. at 716. "Thus, a communication which contains an element of personal disgrace, dishonesty, or disrepute undoubtedly satisfies the definition of defamatory." Id.

---

[49] Id.

[50] Id.

"The intent and meaning of the alleged defamatory statement must be gathered from context as well as the words, and all parts of the statement and the circumstances of its publication must be considered to derive the true meaning." Fourcade v. City of Gretna, 598 So. 2d 415, 419 (La. App. 5 Cir. 3/31/92).

As a preliminary matter, the Defendants argue that there can be no defamation because Redford is unnamed in the KTBS statement. Redford argues that the press release is sufficiently descriptive as to make his identity ascertainable.[51] The Louisiana Fifth Circuit Court of Appeals, in summarizing the law regarding "group defamation," stated that:

> Generally, Louisiana courts recognize the principle that the defamatory words must refer to some ascertainable person, and that person must be the plaintiff. However, many jurisdictions recognize a cause of action for "group defamation," that is, an individual may bring an action for defamation even though he or she is not specifically named if the defamatory words refer to a small, identifiable group to which he or she belongs.

Bujol v. Ward, 00-1393 (La. App. 5 Cir. 1/30/01); 778 So. 2d 1175, 1177-78 (citations and quotations omitted). Redford references an affidavit from Mark Silberstein ("Silberstein"), who is a former news director at KSLA, to argue that people were able to ascertain that Redford was the white, male employee who was fired at the same time as Lee.[52] The Court finds that Redford has presented sufficient evidence to raise a question of fact as to whether the KTBS press release was sufficiently specific as to make his identity an ascertainable fact.

---

[51]Record Document 30, p. 18.

[52]Record Document 30-5.

The first element of a prima facie case of defamation concerns whether someone made a false and defamatory statement about another. Redford argues that the portion of the KTBS statement which stated that he was fired "for repeated violation of the station's written procedure . . . for responding to viewer comments on the official KTBS Facebook page" is incorrect.[53] As discussed above, the Court has found that Redford has provided sufficient evidence to present a question of fact regarding whether he was fired for violating the KTBS social media policy, as referenced in the KTBS statement. Considering this, the Court finds that Redford has provided sufficient evidence to create a question of fact of whether the KTBS statement was truthful when it stated he was fired for responding to a viewer's complaint on his Facebook page.

The parties agree that the second element, whether the statement was an unprivileged publication to a third party, has been satisfied. The third element, the fault on the part of the publisher, is generally negligence or greater.  Here, KTBS implies, without support or analysis, that Redford must prove actual malice-- a higher standard-- because "journalists and television reporters like Redford are considered public figures for purposes of defamation claims."[54] Redford, for his part, is wholly silent on the level of fault he must prove against the publisher to establish his claim of defamation.[55]  He is equally silent on the question of whether, as a journalist, he should be considered a public figure.   As will

---

[53]Record Document 26-6, p. 56.

[54] Record Document 26-3, p. 28.

[55] Record Document 30, pp. 18-19.

Page 22

be discussed below, the Court finds that Redford survives summary judgment even on the actual malice standard, which is the most stringent of the standards available for a defamation claim.

The law is well-settled that a public figure may not recover damages for a defamatory falsehood without clear and convincing proof that the false statement was made with "actual malice." New York Times Co. v. Sullivan, 376 U.S. 254, 279-80, 84 S. Ct. 710 (1964). Actual malice is found when the publisher knew that the statement was false or the statement was made with reckless disregard for whether it was false or not. Id. at 279.

Proof of actual malice is a heavy burden, and "there is a significant difference between proof of actual malice and proof of falsity." Peter Scalamandre & Sons, Inc. v. Kaufman, 113 F.3d 556, 560 (5th Cir. 1997)(citing Bose Corp. v. Consumers Union of U.S., Inc., 466 U.S. 485, 511, 104 S. Ct. 1949, 1965 (1984)). "As long as a defendant does not act knowing his statement is false or with reckless disregard of its truth, actual malice will not be present." Id. at 561. "[T]he actual malice standard is not satisfied merely through a showing of ill will or malice in the ordinary sense of the term . . . [because] [c]ulpability on the part of the defendant is essential." Id. (citations and quotations omitted). There must be evidence that the defendant "entertained serious doubts as to the truth of his publication." Id. (citations and quotations omitted).

As described above, this Court has found that Redford has presented sufficient evidence to raise a genuine dispute of material fact as to whether he was fired because he

violated the KTBS social media policy. If Redford is able to prove that he was fired because of his race or sex, then he will be able to prove that KTBS knowingly issued a false statement as to the termination of his employment. As such, the Court finds that Redford has created a genuine dispute of fact as to this element of the test.

Finally, as to the fifth element, Silberstein's affidavit states that he wanted to hire Redford as an on-air reporter for competitor network KSLA but was not allowed to do so once the KTBS statement was published.[56] This affidavit is sufficient evidence to support a finding that Redford was injured by the KTBS press release, as required for the final element of the test.

Considering all of the above, the Defendants' motion for summary judgment as to Redford's defamation claim must be **DENIED**.

### D.    Intentional Infliction of Emotional Distress

Redford argues that he suffered emotional distress after being fired by KTBS.[57] In order to recover for intentional infliction of emotional distress, a plaintiff must establish that: (1) "the conduct of the defendant was extreme and outrageous;" (2) "the emotional distress suffered by the Plaintiff was severe;" and (3) "the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct." White v. Monsanto Co., 585 So. 2d 1205, 1209 (La. 1991). Louisiana has recognized a cause of action for intentional infliction of

---

[56]Record Document 30-5.

[57]Record Document 34, p. 19.

Page 24

emotional distress in a workplace setting, but it has limited the cause of action to cases that involve "a pattern of deliberate, repeated harassment over a period of time." Id. at 1210. "The distress suffered by the employee must be more than a reasonable person could be expected to endure," and "the employer's conduct must be intended or calculated to cause severe emotional distress, not just some lesser degree of fright, humiliation, embarrassment or worry." Nicholas v. Allstate Ins. Co., 99-C-2522 (La. 8/31/00); 765 So. 2d 1017, 1026-27.

In the present case, Redford argues that there is sufficient evidence to support his claim of intentional infliction of emotional distress because he was fired without cause to prevent Lee's potential racial discrimination suit against KTBS and then his termination was published in a national press release.[58] Even assuming these facts are true, the Court finds no evidence of a "deliberate, repeated harassment over a period of time." Nicholas, 765 So. 2d at 1026. There is no record evidence of extreme or outrageous behavior by the Defendants, and therefore, the Court finds that Redford has failed to raise sufficient evidence to create a question of fact regarding his intentional infliction of emotional distress claim. The Defendants' motion for summary judgment on Redford's intentional infliction of emotional distress claim shall be **GRANTED**.

---

[58]Record Document 34, p. 19.

Page 25

### E.    Negligence and Other State Law Claims

The Defendants argue that Redford has not provided sufficient evidence to support his general negligence claims.[59]   Redford has not described these "negligence claims" with any particularity.[60]   Yet, he argues that there are sufficient facts in the record to support his claims, despite the fact that he fails to direct the Court's attention to said evidence.  It is Redford's burden at this stage to go beyond the pleadings and designate specific facts in the record showing that there is a genuine issue for trial.  This, he has failed to do. Therefore, the Defendants' motion for summary judgment on all of Redford's remaining claims is hereby **GRANTED**.

## IV.    Conclusion

For the foregoing reasons, the Defendants' Motion for Summary Judgment [Record Document 26] is hereby **GRANTED in part** and **DENIED in part**. The Court makes the following rulings:

1)    Defendants' Motion for Summary Judgment insofar as it relates to Plaintiff's exhaustion of administrative remedies is **DENIED**;

2)    Defendants' Motion for Summary Judgment insofar as it relates to Plaintiff's Title VII and Section 1981 claims is **DENIED**;

3)    Defendants' Motion for Summary Judgment insofar as it relates to Plaintiff's defamation claim is **DENIED**;

---

[59]Record Document 26-3, p. 24 and Record Document 32, p. 10.

[60]Id.

4)   Defendants' Motion for Summary Judgment insofar as it relates to Plaintiff's intentional infliction of emotional distress claim is **GRANTED**; and

5)   Defendants' Motion for Summary Judgment insofar as it relates to all remaining claims is **GRANTED**.

**THUS DONE AND SIGNED** this _____ day of September, 2015.

_____
ELIZABETH ERNY FOOTE
UNITED STATES DISTRICT JUDGE