UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| **CHRIS REDFORD** | **CIVIL ACTION NO. 13-3156** |
| **VERSUS** | **JUDGE ELIZABETH ERNY FOOTE** |
| **KTBS, LLC, ET AL** | **MAGISTRATE JUDGE HORNSBY** |

### MEMORANDUM RULING

Before the Court is Defendants' Motion for Reconsideration. [Record Document 40.] Defendants' motion asks the Court to reconsider its denial of summary judgment, Record Document 36, with respect to Plaintiff's Title VII claims. For the reasons announced below, the Court **GRANTS** in part and **DENIES** in part Defendants' motion.

I.  Background

Plaintiff Chris Redford alleges that the local TV news station for whom he worked fired him not, as it claims, because he violated the station's social media policy, but because he was a white male. He consequently sought relief from the Court against the news station, KTBS, LLC; its general manager, George Sirven; and its news director, Randy Bain, for racial and gender discrimination under Title VII[1] and § 1981[2] and for defamation,

---

[1] 42 U.S.C. §§ 2000e to 2000e-17 (2012).

[2] 42 U.S.C. § 1981. Because the Fifth Circuit analyzes intentional discrimination claims brought pursuant to Title VII or § 1981 under the same rubric, see Raggs v. Miss. Power & Light, 278 F.3d 463, 468 (5th Cir. 2002), Plaintiff's employment discrimination claims under § 1981 are one in the same as his employment discrimination claims under Title VII.

negligence, and intentional infliction of emotional distress under Louisiana law. Record Document 15.

Defendants moved for summary judgment on all of Mr. Redford's claims. Record Document 26. The Court denied summary judgment in almost all respects save for the Plaintiff's supplemental state law claims of negligence and intentional infliction of emotional distress, both of which the Court dismissed. Record Document 36. Defendants now ask the Court to reconsider its summary judgment ruling in two respects. Record Document 40. First, Defendants argue that failing to dismiss Mr. Redford's Title VII claims against all Defendants was a manifest error of law because Mr. Redford cannot as a matter of law establish either the fourth element of his prima facie case or sufficient pretext to rebut the Court's finding that Defendants have shown a legitimate, nondiscriminatory reason for terminating Mr. Redford. Second, Defendants argue that failing to dismiss Mr. Redford's Title VII claims against Mr. Sirven and Mr. Bain was a manifest error of law because individuals are not susceptible to liability under Title VII.

## II.   Motion for Reconsideration Standard

The Federal Rules of Civil Procedure do not formally recognize a motion for reconsideration. Where it seeks to amend an interlocutory order,[3] however, a motion for reconsideration is generally categorized by courts as a motion pursuant to Rule 54(b), see James River Ins. Co. v. Affiliates, Inc., 2013 WL 1197235, at *1 (W.D. La. Mar. 25, 2013), which permits a court to revise an order adjudicating fewer than all the claims among the

---

[3] See Lavespere v. Niagara Mach. & Tool Works, Inc., 910 F.2d 167, 185 (5th Cir. 1990) (deeming a denial of summary judgment an interlocutory order).

parties "at any time" before the entry of final judgment. Fed. R. Civ. P. 54(b).

Rule 54(b) itself, however, contains no standard for evaluating when a court should amend its own judgment. While the absence of a statutory standard gives courts broad discretion to modify an order pursuant to Rule 54(b), see Melancon v. Texaco, Inc., 659 F.2d 551, 553 (5th Cir.1981) (finding that a court can modify an order under Rule 54(b) for any "cause seen by it to be sufficient"), "this broad discretion should be exercised sparingly in order to forestall the perpetual reexamination of orders and the resulting burdens and delays." S. Snow Mfg. Co. v. SnoWizard Holdings, Inc., 921 F. Supp. 2d 548, 564-65 (E.D. La. 2013) (citing 18B Charles A. Wright et al., Federal Practice & Procedure § 4478.1 (2d ed. 2002)).

Courts also generally limit their discretion under Rule 54(b) by applying a less exacting version of the standard used to alter or amend a final judgment under Rule 59(e). See, e.g., Livingston Downs Racing Ass'n, Inc. v. Jefferson Downs Corp., 259 F. Supp. 2d 471, 474–75 (M.D. La. 2002). Altering or amending a judgment pursuant to Rule 59(e) is a disfavored, "extraordinary remedy that should be used sparingly." Templet v. HydroChem Inc., 367 F.3d 473, 479 (5th Cir. 2004); S. Constructors Group, Inc. v. Dynalectric Co., 2 F.3d 606, 611 (5th Cir. 1993). Indeed, Rule 59(e) permits amendment to the judgment only "to correct manifest errors of law or fact or to [address] newly discovered evidence." Templet, 367 F.3d at 479 (citing Waltman v. Int'l Paper Co., 875 F.2d 468, 473 (5th Cir. 1989)). Further, a Rule 59(e) motion is "not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised

before the entry of judgment." Id. at 479 (citing Simon v. United States, 891 F.2d 1154, 1159 (5th Cir. 1990)).

### III. Analysis

#### A. Plaintiff's Title VII Claim

##### 1. *Summary Judgment on The Prima Facie Case*

Defendants argue that failing to dismiss Mr. Redford's Title VII claim was a manifest error of law because even viewing the evidence in a light most favorable to Mr. Redford, he has not shown that among similarly situated employees in nearly identical circumstances, he was treated less favorably because of race.

To make a prima facie case of employment discrimination under Title VII, Mr. Redford must show that (1) he is a member of a protected group; (2) he was qualified for the position at issue; (3) he was discharged or suffered some adverse employment action by the employer; and (4) he was treated less favorably because of his membership in that protected class than other similarly situated employees who were not members of the protected class, under nearly identical circumstances. See Lee v. Kansas City S. Ry. Co., 574 F.3d 253, 259 (5th Cir. 2009). Under the fourth element, the most important factors for determining when employees qualify under the fourth element as comparators, i.e., when they are "similarly situated" and treated better "under nearly identical circumstances," are (1) whether "the employees being compared held the same job or responsibilities"; (2) whether the "ultimate decision maker as to the employees' continued employment is the same individual, even if the employees do not share an immediate

supervisor"; (3) whether the employees' track records are comparable, though they need not include the identical number of identical infractions; and (4) whether the offenses for which discipline was meted out were of comparable seriousness. Id. at 260-61. In its summary judgment ruling, the Court found that two KTBS employees qualified as comparators: Rhonda Lee, a black female, and Sarah Machi, a white female. Record Document 36, pp. 13-14. Further, the Court found that Mr. Redford was treated less favorably than those two comparators because in response to their first infraction of the station's social media policy, which prohibits commenting to viewers on Facebook, Defendants fired Mr. Redford and reprimanded Ms. Lee and Ms. Machi but did not fire them. Consequently, the Court ruled that Mr. Redford had "presented sufficient evidence to demonstrate a genuine dispute of fact as to the fourth element of his prima facie case of gender and racial discrimination." Record Document 36, p. 15.

Defendants argue that the inclusion of Ms. Machi as a comparator to Mr. Redford defeats Mr. Redford's prima facie case as a matter of law because she was in the same protected racial class as Mr. Redford (she is white) yet she suffered no adverse employment action.[4] Although Defendants raised essentially the same argument in their

---

[4] Defendants assert that Chrissi Coile Reesby, who is a white female, should also be included as a comparator to Mr. Redford. In his EEOC intake questionnaire, Mr. Redford stated that Chrissi Coile Reesby "did exactly what they 'claimed' I did and she was never reprimanded or discharged." Record Document 26-3, p. 21. During his deposition, Mr. Redford also confirmed that he wrote this statement. Record Document 26-6, p. 30. For reasons discussed below, the inclusion of Chrissi Coile Reesby as a comparator to Mr. Redford would be irrelevant to the Court's analysis of the Defendants' arguments. The Court therefore declines to decide whether she should be a comparator and assumes, *arguendo*, that she is not.

summary judgment motion, see Record Document 32, p. 5, they reurge it with the benefit of a Seventh Circuit case not cited in their summary judgment motion. See Crawford v. Ind. Belt Harbor R.R. Co., 461 F.3d 844 (7th Cir. 2006). In Crawford, out of the roughly 200 total railroad conductors employed by the defendant, thirteen, including the plaintiff, had amassed a similar amount of infractions in the same time period. Id. at 845-46. Of the thirteen bad employees, the defendant had fired eleven–one black female and ten white males–and retained two–both white males. Id. at 845. The black female sued under Title VII and framed the fourth element of her prima facie case by arguing that there were two white males who were similarly situated under nearly identical circumstances but, unlike her, they were not fired. Id. Writing for the court, Judge Posner rejected this approach as misleading cherry picking. Id. There were twelve, not two, employees who qualified as comparators for the purposes of analyzing the fourth element of a prima facie Title VII case. Id. at 845-46. Including all twelve comparators in the analysis of the fourth element, the court found that the plaintiff's status as a member of a protected class (black or female) no longer correlated with an adverse employment action: instead showing that all (2/2) white or male comparators were treated better than her, the plaintiff could now only show that a few (2/12) of the white or male comparators were treated better than her. Id. at 845. Because of this infirmity, the plaintiff was not entitled to relief as a matter of law. Id. at 845, 847. The Court hypothesized that limiting her comparison to the two white male employees who were not fired could be a viable approach, but in order to ensure that fair inferences were drawn from that comparison, she would need to show that

she and those two employees were comparable in every possible respect save for race or gender, which she could not do.  See id. at 846; see also Lee, 574 F.3d at 259 ("[A] requirement of complete or total identity rather than near identity would be essentially insurmountable . . . .").

Armed with this holding, Defendants argue that Mr. Redford cannot meet the standard set by Crawford.  If he compares himself to Ms. Lee and Ms. Machi, Defendants argue that his claim fails because race would no longer correlate with an adverse employment action, i.e., there would be a similarly situated white employee who did not suffer the same adverse employment action as Mr. Redford did under nearly identical circumstances.  See id. at 845.  And if he compares himself only to Ms. Lee, Defendants argue his claim fails because Ms. Lee is not truly comparable in every possible respect except race.

Defendants ignore that Mr. Redford has alleged both racial *and* sexual discrimination.[5]  And Crawford, even if it were binding authority, would not disturb Mr. Redford's gender discrimination claim because the gender classification of Mr. Redford and his comparators correlates with whether or not they suffered an adverse employment action.  461 F.3d at 845.  That is, unlike the relationship between the protected classification status and employment outcome in Crawford, which was ambiguous because

---

[5]As noted, Mr. Redford filed this suit alleging discrimination based on race and gender.  Record Document 15, pp. 4-6.  Likewise, this Court in declining summary judgment ruled that Mr. Redford had "presented sufficient evidence to demonstrate a genuine dispute of fact as to the fourth element of his prima facie case of gender and racial discrimination."  Record Document 36, p. 15.

very few of the comparators outside the plaintiff's protected status were treated better than the plaintiff, here the relationship between the protected classification status and employment outcome is quite clear: all of Mr. Redford's comparators are outside Mr. Redford's protected status because they are both women and all were treated better than Mr. Redford because they were not fired. See id. at 845-46; Record Document 36, p. 15. Therefore, there is still a genuine dispute of fact as to the fourth element of Mr. Redford's prima facie case.

In addition, Mr. Redford has also made a prima face case of discrimination based on the combination of sex and gender–that is, a claim that he was fired not because he is white or because he is male, but because he is a white male. See Jefferies v. Harris Cty. Cmty. Action Ass'n, 615 F.2d 1025, 1032-34 (5th Cir. 1980). In Jefferies, a black female sued her employer for discrimination based on her status as a black female. Id. at 1029. The facts at trial established, among other things, that every position for which the plaintiff had applied had been filled by males or non-black females. Id. The district court did not entertain the plaintiff's theory that her discrimination was based on a combination of race and gender. Id. at 1029, 1032. Instead, it addressed whether she was discriminated against based on race and gender separately and found that she was not entitled to relief on either theory. Id. The Fifth Circuit reversed, holding that as a matter of law "discrimination against black females can exist even in the absence of discrimination against black men or white women." Id. at 1032.

Because Mr. Redford, like the plaintiff in Jefferies, has plead both racial and gender

discrimination, he may plead that he was discriminated against because of the combination of his race and gender. See id. at 1029; Record Document 15; see also EEOC Compliance Manual, EEOC (Apr. 19, 2006), http://www.eeoc.gov/policy/docs/race-color.html#IVC (labeling this type of claim "intersectional discrimination"). And again, Crawford would not foreclose this claim because the protected classification, white and male, correlates with the adverse employment action in this suit.

Thus, even if the Court ignores the high burden that a party moving for reconsideration faces, the reasons above show that the Defendants have failed to demonstrate that the Court made a manifest error of law in ruling that there is a genuine dispute of fact as to whether Mr. Redford has made his prima facie case under Title VII.

*2. Summary Judgment on Pretext*

Defendants next argue that Mr. Redford cannot as a matter of law demonstrate pretext to rebut the Court's finding that Defendants have shown a legitimate, nondiscriminatory reason for terminating Mr. Redford.

Under the burden-shifting framework for Title VII claims, once a plaintiff makes a prima facie case of employment discrimination, the defendant then has the burden to articulate a legitimate, nondiscriminatory reason for its employment action. See Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 142 (2000). If the defendant can demonstrate a legitimate, nondiscriminatory reason for the adverse action, the burden shifts back to the plaintiff to show that "the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." Id. at 143.

In its summary judgment ruling, the Court found that the Defendants had demonstrated a legitimate, nondiscriminatory reason for firing Mr. Redford because his reaction on Facebook to a viewer's comment referenced subjects that were more inappropriate than the subjects discussed in Ms. Lee's or Ms. Machi's Facebook responses. Record Document 36, pp. 16-17. The Court also ruled, however, that Mr. Redford had demonstrated that there was a genuine dispute of fact about whether Defendants' proffered reasons were pretextual. Mr. Redford offered evidence that KTBS's social media policy only applied to employee's official social media accounts and not to their private social media accounts. Id. at 17-19. Mr. Redford also showed that he shared the post that caused his termination from his private, rather than official, account. Based on this, the Court found that Mr. Redford had made a credible claim that his termination was pretextual because there was arguably no violation of KTBS's social media policy, and therefore company policy. Id. at 17-19.

Defendants' arguments here raise no new law or facts in contesting this ruling. Rehashing arguments before the Court is inappropriate for a motion for reconsideration. Templet, 367 F.3d at 479. The Court therefore declines to reconsider its ruling that there is a genuine dispute of fact about whether Defendants' proffered reasons for firing Mr. Redford were pretextual.

Thus, for the reasons stated above, the Court **DENIES** Defendants' motion to reconsider the Court's ruling that Defendants are not entitled to summary judgment on Plaintiff's Title VII claim.

B. <u>Plaintiff's Title VII Claims Against George Sirven and Randy Bain</u>

Defendants argue Plaintiff cannot sustain his Title VII claims against George Sirven and Randy Bain because under Fifth Circuit precedent, there is no individual liability for employees under Title VII. Though Defendants raised this argument in their motion for summary judgment, <u>see</u> Record Document 26-3, p. 26, the Court did not address it in its summary judgment ruling and Mr. Redford, so far as the Court can see, has likewise not addressed it.

Here, Defendants are correct. In the Fifth Circuit, "there is no individual liability for employees under Title VII." <u>Smith v. Amedisys Inc.</u>, 298 F.3d 434, 448 (5th Cir. 2002) (citing <u>Indest v. Freeman Decorating, Inc.</u>, 164 F.3d 258, 262 (5th Cir. 1999)). "Further, a plaintiff is not entitled to maintain a Title VII action against both an employer and its agent in an official capacity." <u>See id.</u> at 449 (citing <u>Indest</u>, 164 F.3d at 262). Thus, the Court **GRANTS** in part the Defendants' motion to reconsider and **DISMISSES** the Plaintiff's Title VII claim against Randy Bain and George Sirven. Pursuant to 28 U.S.C. § 1367, however, Plaintiff may continue to pursue his state law claims against Randy Bain and George Sirven.

IV. **Conclusion**

For the foregoing reasons, the Defendants' Motion for Reconsideration, Record Document 40, is hereby **GRANTED** in part and **DENIED** in part. The Court makes the following rulings:

1) Insofar as it seeks to dismiss Plaintiff's Title VII claim against KTBS, LLC, the

Defendants' Motion for Reconsideration is **DENIED**;

2) Insofar as it seeks to dismiss Plaintiff's Title VII claims against Randy Bain and George Sirven, the Defendants' Motion for Reconsideration is **GRANTED**; and

3) In light of the Court's ruling above, the Plaintiff's Title VII claims against Randy Bain and George Sirven are hereby **DISMISSED WITH PREJUDICE**.

**THUS DONE AND SIGNED** in Shreveport, Louisiana, on this 10th day of February, 2016.

ELIZABETH ERNY FOOTE
UNITED STATES DISTRICT JUDGE